UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROEGESTER GRAYS, | : | 1:20-CV-02332 |
| | : | |
| Petitioner, | : | (Magistrate Judge Schwab) |
| | : | |
| | : | |
| v. | : | |
| | : | |
| SUPERINTENDENT BARRY SMITH, | : | |
| | : | |
| Respondent. | : | |

**MEMORANDUM OPINION**

## I. Introduction.

One afternoon in early March 2013, on a rural road in Bradford County, Pennsylvania, the vehicle driven by Petitioner Roegester Grays collided with another vehicle. That other vehicle contained a family—a mother, father, and three minor children. As a result of the collision, the mother and father were killed, and two of the three minor children were injured. Grays was charged with, and subsequently convicted of, multiple crimes stemming from that collision. In this habeas corpus case, Grays is challenging his conviction and sentence from the Court of Common Pleas of Bradford County, Pennsylvania. For the reasons discussed below, we will deny Grays' petition for a writ of habeas corpus.

## II.   Background and Procedural History.

### A.   Grays' Conviction and Sentence.

"On March 1, 2013, at approximately 5:00 p.m., [Grays], who was driving a Chevrolet Avalanche ("Avalanche") westbound on Route 328, collided head-on with a Chevrolet Suburban ("Suburban"), which was traveling eastbound on Route 328 and being driven by Ryan English." *Commonwealth v. Grays*, 167 A.3d 793, 796–97 (Pa. Super. Ct. 2017).   "As a result of the crash, Mr. English and his wife, Karen English, were killed instantly, and their thirteen-year-old son, C.M., and four-year-old son, L.E., were injured." *Id*. at 797.   "Their ten-year-old son, G.E., was not injured." *Id*.

Grays "was arrested and charged with numerous crimes." *Id*.   In November 2015, the case "proceeded to a jury trial at which the parties stipulated that the death of Mr. and Mrs. English was caused by trauma incurred during the motor vehicle collision at issue." *Id*. at 798.   The Superior Court summarized the testimony of the witnesses at trial. *Id*. at 798–805.[1]

---

[1]  Because the parties have not submitted a copy of the trial transcript, we rely on the summary of the trial testimony set forth by the Superior Court.   Neither party suggests that that summary is not accurate.

The trial included testimony from two witnesses (Rita Dennison and her brother, Hugh B. Cunningham) who witnessed Grays' Avalanche shortly prior to the collision "zooming down the road," "hauling butt," and passing cars in a no-passing zone. *Id*. at 798.[2]  Those witnesses testified that after the Avalanche crested a hill and they lost sight of it, they heard a collision, which sounded like an explosion. *Id*.

The trial also included testimony from three witnesses (Anthony Amentler, Michael Kipferl, and C.M.) who testified that they saw Grays' Avalanche in the wrong lane heading for the English's Suburban. *Id*. at 798–99.   Amentler, who was travelling behind the English's Suburban, testified that "all four tires of the Avalanche were over the double yellow line on the wrong side of the road" and that the Avalanche hit the Suburban "pretty much head-on." *Id*. at 798.   Kipferl, who was travelling behind Amentler, also testified that the Avalanche hit the Suburban head on. *Id*. at 799.

C.M. testified "that he was in the Suburban on the day in question with his siblings, as well as his puppy, PJ, who perished in the accident, and the family's adult black Labrador Retriever, Lila." *Id*. at 799.   Mr. English was driving, Mrs. English was in the front passenger seat, C.M. was in the left side of the back

---

[2] For readability, here, and elsewhere, when quoting the Superior Court's decision, we omit internal quotation marks and citations to the record.

passenger seat, L.M. was in a car seat on the right side of the back passenger seat, and G.E. and Lila were in the third row. *Id.*   C.M. "remembered seeing a truck coming towards the family's Suburban and it was driving on [their] side of the lane." *Id.*   "After the collision, the Suburban was upside down and all three boys, who were wearing seat belts or secured in a car seat, were dangling upside down." *Id.* "C.M. did not see or hear any noise coming from his stepfather or mother." *Id.* "[H]e crawled out of the Suburban, and by the time he exited, a man was holding L.E.; G.E. was also out of the Suburban and so was the dog, Lila." *Id.*

At trial, Michael Frawley, who did not observe the collision, but came upon the scene a short time later, testified that he saw Grays in the Avalanche "as well as beer cans lying on the driver's side floor and outside on the ground." *Id.* at 800. Amentler had also testified that while he was checking on Grays in the Avalanche, he was unable to open the front door, but when he opened the back door of the Avalanche, a beer can fell out. *Id.* at 799.

The trial also included testimony from police, fire, ambulance, and paramedic personnel who responded to the scene. *Id.* at 800.   A state police trooper testified that he saw an empty beer can lying on the road near the driver's side of the

4

Avalanche. *Id*.   "[A] subsequent search of [Grays'] vehicle pursuant to a search warrant revealed a sandwich baggie containing soft-rolled marijuana cigarettes." *Id*.

The paramedic who transported Grays to Arnot Ogden Hospital noted that Grays told her that he had swerved to miss hitting a black dog. *Id*.   At the hospital, Grays also told a Pennsylvania State Trooper, that the collision "occurred when either he or the Suburban swerved to miss a black Labrador Retriever." *Id*. at 802. Grays later told a detective that "before the crash, a medium-sized black dog had entered the roadway." Id. at 801.   And during a pretrial hearing, Gray indicated that either a small dog or a deer was in the roadway. *Id*.

A physician's assistant at the hospital testified that "she smelled a strong odor of alcohol on [Grays'] breath." *Id*. at 801–02.   Upon questioning Grays at the hospital, a State Police Trooper "noticed a faint order of alcohol and that [Grays'] speech was slow." *Id*. at 802.   Grays "denied drinking alcohol or using drugs, but he admitted he had taken a blood thinner, as well as a muscle relaxer, earlier in the day." *Id*.   A couple of months after the collision, Grays told a detective that on the day in question, "he had taken a prescribed muscle relaxer and had consumed a couple of beers." *Id*. at 801.

The prosecution presented the testimony of State Police Trooper Joseph Wasko, who is a collision analyst and reconstruction specialist. *Id*. at 802.   Wasko testified about his examination and mapping of the scene and his analysis of the airbag control modules from both vehicles. *Id*. at 802-03.   Based on his analysis of the scene, including the "gouge marks, scrapes, and scratches in the road," and the damage to the vehicles, Wasko concluded that both vehicles were in the eastbound lane at the time of the collision. *Id*. at 803.   Wasko also testified about the positions of the vehicles after the collision and how they purportedly ended up in those positions. *Id*.

In addition to testimony regarding C.M. and L.E.'s injuries from the crash, there was testimony from medical and laboratory personnel regarding Grays' care at the hospital and the drawing and testing of this Grays' blood for alcohol. *Id*. at 799–802.   Grays' blood alcohol content was .123%. *Id*. at 802.

"The defense presented the testimony of Diana Protzman, a rescue worker for a nearby fire department." *Id*. at 803.   While attending to Grays at the scene, she was about an arm's length away from him for four or five minutes, but "she did not detect an odor of alcohol coming from [Grays] and she did not observe any signs of intoxication." *Id*. at 803–04.

6

Gray also testified at trial.   The Superior Court summarizes his testimony as

follows:

> [Grays] took the stand in his own defense, and he testified that he
> retired from the United States Navy due to a medical disability
> involving his heart and lower legs.   He denied consuming
> alcohol on March 1, 2013, and he denied driving his vehicle in
> the fashion described by Ms. Dennison and her brother.   He
> testified that, as he was approaching the area where the collision
> occurred, he was going the speed limit and there were no cars in
> front of or behind him.
>
> [Grays] indicated that, as he crested the hill "a black animal had
> hopped out in front of [him] and [he] swerved to miss it."   He
> clarified that the animal came from his right.   He indicated that
> his reaction was to jerk the steering wheel and then look in his
> rear view mirror to determine whether he had hit the animal.   He
> determined that he did not hit the animal and when he looked
> forward again he saw "a vehicle coming straight at [him]."   He
> indicated that his vehicle was situated on his side of the road in
> the westbound lane and the opposing vehicle was at an angle
> coming into his lane.   He tried to avoid the collision, but he was
> unable to do so.   He noted his Avalanche's front passenger side
> hit the front passenger side of the Suburban.
>
> [Grays] testified that, as he was being removed from the vehicle
> by emergency personnel, he advised them that he had swerved to
> avoid a black animal, which may have been a dog.   He noted
> that he also told the woman in the ambulance, hospital personnel,
> Trooper Youngblood, and the detective from the District
> Attorney's Office that he had swerved to miss a black dog or
> black animal.   He testified that the only person with whom he
> had any verbal interaction at the accident scene was Ms.
> Protzman.

7

[Grays] indicated that, during the ambulance ride to Arnot Ogden, Ms. Prosser told him that he was being transported to a hospital in New York, but since the accident occurred in Pennsylvania, he needed to sign a consent form so that blood could be drawn.   Contrary to Ms. Prosser's testimony, [Grays] testified that Ms. Prosser withdrew one vial of blood from him while he was in the ambulance.   [Grays] further testified that, after he was taken into the Emergency Room, Ms. Prosser went out to the ambulance to retrieve the vial of blood, but he has no knowledge of what happened to the blood after this time.

Contrary to Nurse Caporaso's testimony, [Grays] denied that Nurse Caporaso drew any pre-arrest blood samples from him while he was at Arnot Ogden.   He admitted that she gave him an injection of a narcotic for the pain.

[Grays] testified that, at approximately 8:00 p.m., Trooper Youngblood arrived at Arnot Ogden, he asked [Grays] to consent to a blood draw, and [Grays] consented, resulting in one vial of post-arrest blood being drawn from his person by a nurse. [Grays] further testified that Trooper Youngblood immediately took control of the vial of blood.   He indicated that he informed Trooper Youngblood that he had not consumed any alcohol on that day.   He noted that, in May of 2013, he subsequently informed the detective from the District Attorney's Office that he had not consumed any alcohol on March 1, 2013; however, he admitted that he told the detective that he had taken a muscle relaxer and consumed "some beers" the night before the accident.   He denied that any beer cans fell out of his Avalanche on the day of the accident.

*Id*. at 804–05 (footnote omitted).

The jury convicted Grays of "two counts of homicide by vehicle while driving

under the influence of alcohol ("homicide by vehicle–DUI"), one count of

8

aggravated assault by vehicle while driving under the influence ("aggravated assault by vehicle–DUI"), two counts of homicide by vehicle, one count of aggravated assault by vehicle, two counts of driving under the influence-general impairment and high rate ("DUI"), and one count of possession of a controlled substance." *Id*. at 796 (footnote omitted).   And the trial court found Grays guilty of five summary traffic offenses: "meeting vehicle proceeding in opposite direction, disregard traffic lane, careless driving, reckless driving, and limitation on driving left side of road." *Id*. at 796 n.1.

The court sentenced Grays "to an aggregate of 252 months plus 30 days in prison to 564 month in prison." *Id*. at 805 (footnote omitted).   "Specifically, the trial court sentenced [Grays] to the following: homicide by vehicle–DUI, 60 months to 120 months in prison; homicide by vehicle–DUI, 60 months to 120 months in prison; aggravated assault by vehicle–DUI, 48 months to 96 months in prison; homicide by vehicle–30 months to 84 months in prison; homicide by vehicle–30 months to 84 months in prison[;] aggravated assault by vehicle–24 months to 60 months in prison[;] and possession of a controlled substance–30 days in prison." *Id*. at 805 n.6.   "The trial court directed that all sentences be served consecutively to

each other for an aggregate of 252 months plus 30 days to 564 months in prison." *Id.*

And "[t]he trial court imposed fines with respect to each summary conviction." *Id.*

## B. Direct Appeal.

On direct appeal, Grays raised numerous claims. *Commonwealth v. Grays*,

167 A.3d 793, 805–06 (Pa. Super. Ct. 2017).   As relevant here, he raised the

following two claims regarding his sentence:

> Whether the trial court erred in imposing maximum
> aggravated range minimum sentences, consecutive to each other,
> for both homicide by vehicle—DUI and homicide by
> vehicle-non-DUI where there was one collision which caused
> two deaths?
>
> . . .
>
> Whether the trial court erred in considering [Grays']
> perceived lack of remorse and prior criminal history as the
> rationale supporting the imposed sentences?

*Id*. at 805–06.   Rejecting those claims, as well as the others raised by Grays, the

Pennsylvania Superior Court affirmed Grays' judgment of sentence. *Id*. at 796, 806–

18.   And on January 8, 2018, the Pennsylvania Supreme Court denied Grays'

petition for allowance of appeal. *Commonwealth v. Grays*, 178 A.3d 106 (Pa. 2018)

(Table).

10

### C.   PCRA Proceedings.

Although Grays initially filed a pro se Post Conviction Relief Act ("PCRA")

petition, the PCRA court later appointed him counsel, and counsel amended Grays'

PCRA petition. *Commonwealth v. Grays*, No. 29 MDA 2019, 2019 WL 2323851, at

*2 (Pa. Super. Ct. May 31, 2019).   In his amended petition, Grays "raised numerous

ineffective assistance of counsel claims against trial counsel." *Id*.

The PCRA court held a hearing, at which Grays as well as his mother, brother,

and friend testified. *See doc. 11-17*.[3]   "On December 20, 2018, the PCRA court

denied [Grays'] PCRA petition." *Grays*, 2019 WL 2323851, at *2.   Grays appealed

that denial raising five claims of ineffective assistance of counsel. *Id*.   Only one of

those claims is relevant to the present habeas petition, *i.e.*, Grays' claim that "[t]rial

[c]ounsel was ineffective for failing to properly advise [him] regarding his

sentencing exposure and in doing so, improperly convincing [him] to reject a plea

offer that would have resulted in a significantly reduced sentence." *Id*.   The

Pennsylvania Superior Court affirmed the denial of Grays' PCRA petition. *Id*. at 8.

And on November 13, 2019, the Pennsylvania Supreme Court denied Grays'

---

[3] Grays' trial counsel did not testify at the hearing as he had died prior to the hearing. *Grays*, 2019 WL 2323851, at *2 n.1.

petition for allowance of appeal. *Commonwealth v. Grays*, 219 A.3d 1104 (Pa. 2019) (Table).

### D.   The Present Petition for a Writ of Habeas Corpus.

On December 14, 2020, Grays, through counsel, filed the present petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.   He raises the following claims.   First, Grays claims that he was sentenced in violation of the Double Jeopardy Clause.   Second, he claims that he was denied due process in that his sentence was based on impermissible factors, namely, his exercise of his right to remain silent at sentencing and his exercise of his right to proceed to trial.   Third, he claims that his trial counsel was ineffective by failing to investigate, consult with, and/or present an accident reconstructionist.   Fourth, he claims that his trial counsel was ineffective by failing to discuss with him a no-contest plea.   Fifth, he claims that his trial counsel was ineffective by failing to adequately advise him regarding his sentencing exposure.[4]   Sixth, he claims that his trial counsel was ineffective by failing to competently advise him about his decision to testify and to adequately

---

[4] Grays combined this claim with his prior claim regarding counsel not advising him about a no-contest plea.   But because they are analytically distinct claims, we address them as separate claims.

prepare him to testify.   Seventh, he claims that he is entitled to habeas relief due to the cumulative effect of the above errors.   And Eighth, he claims that to the extent that counsel failed to raise the above claims, counsel was ineffective.

The respondent filed a response to the petition.   The parties then consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c), and the case was referred to the undersigned.   Grays later filed a reply.

Grays properly presented three of his claims to the state court.   But he failed to present his remaining claims to the state court.   For the following reasons, we conclude that Grays is not entitled to habeas relief as to any of this claims.

### III.   Grays is not entitled to habeas relief as to any of the claims that he presented to the state courts.

Grays presented his double jeopardy claim, his due process sentencing claim, and one his ineffective-assistance-of-trial-counsel claims to the state court, and the state court addressed those claims on the merits.   Thus, we review those claims on the merits under the deferential standard of 28 U.S.C. § 2254(d).   We begin by setting forth the standards for addressing habeas claims on the merits.   Then, addressing each of these claims, we conclude that Grays is not entitled to habeas relief as to any of them.

### A.   The Standard for Addressing Habeas Claims on the Merits.

"The federal habeas statute, as amended by the Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes important limitations on the power of

federal courts to overturn the judgments of state courts in criminal cases." *Shoop v.*

*Hill*, 139 S. Ct. 504, 506 (2019).   In addition to overcoming procedural hurdles, a

state prisoner must meet exacting substantive standards to obtain habeas corpus

relief.   A federal court may not grant habeas corpus relief with respect to any

claim that was adjudicated on the merits in state court unless the state court's

adjudication

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).

The standard under Section 2254(d) is highly deferential and difficult to meet.

*Cullen v. Pinholster,* 563 U.S. 170, 181 (2011).   It "reflects the view that habeas

corpus is a 'guard against extreme malfunctions in the state criminal justice

systems,' not a substitute for ordinary error correction through appeal." *Harrington*

*v. Richter,* 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia,* 443 U.S. 307,

14

332 n.5 (1979) (Stevens, J., concurring)).    State courts are presumed to know and follow the law, *Woods v. Donald,* 575 U.S. 312, 316 (2015), and § 2254(d) "'demands that state-court decisions be given the benefit of the doubt.'" *Pinholster,* 563 U.S. at 181 (quoting *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002)).

Under § 2254(d)(1), only the holdings, not the dicta, of the Supreme Court constitute "clearly established Federal law." *Howes v. Fields,* 565 U.S. 499, 505 (2012).    "Furthermore, in determining what is 'clearly established,' Supreme Court decisions cannot be viewed 'at a broad level of generality,' but instead must be viewed on a 'case-specific level.'" *Rosen v. Superintendent Mahanoy SCI*, 972 F.3d 245, 253 (3d Cir. 2020) (quoting *Fischetti v. Johnson*, 384 F.3d 140, 148 (3d Cir. 2004)).    Thus, "[t]he 'clearly established Federal law' provision requires Supreme Court decisions to be viewed through a 'sharply focused lens.'" *Id*. (quoting *Fischetti*, 384 F.3d at 149).

Under the "contrary to" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).    In other words, "a state court

decision is 'contrary to' clearly established law where 'the Supreme Court has established a rule that determines the outcome of the petition.'" *Rosen*, 972 F.3d at 252 (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 888 (3d Cir. 1999) (en banc)).   Thus, "'[i]t is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent *requires* the contrary outcome." *Id*. (quoting *Matteo*, 171 F.3d at 888 (italics in original)).

Under the "unreasonable application" clause of § 2254(d)(1), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413.   Because federal habeas relief may be granted only if the "state court's application of clearly established federal law was objectively unreasonable[,] an incorrect application of federal law alone does not warrant relief." *Keller v. Larkins*, 251 F.3d 408, 418 (3d Cir. 2001).   "The term 'unreasonable' refers not to 'ordinary error' or even to circumstances where the petitioner offers 'a strong case for relief,' but rather to

16

'extreme malfunctions in the state criminal justice syste[m].'" *Mays v. Hines*, 141 S. Ct. 1145, 1149 (2021) (quoting *Harringto*n, 562 U.S. at 102).

Under the "unreasonable application" clause of § 2254(d)(1), "if the state-court decision was reasonable, it cannot be disturbed." *Hardy v. Cross,* 565 U.S. 65, 72 (2011).   "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington,* 562 U.S. at 101 (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).   "In other words, a federal court may intrude on a State's 'sovereign power to punish offenders' only when a decision 'was so lacking in justification . . . beyond any possibility for fairminded disagreement.'" *Mays*, 141 S. Ct. at 1149 (quoting *Harrington,* 562 U.S. at 103).

"When assessing whether a state court's application of federal law is unreasonable, 'the range of reasonable judgment can depend in part on the nature of the relevant rule' that the state court must apply." *Renico v. Lett*, 559 U.S. 766, 776 (2010) (quoting *Yarborough,* 541 U.S. at 664).   "Because AEDPA authorizes federal courts to grant relief only when state courts act *unreasonably,* it follows that '[t]he more general the rule' at issue—and thus the greater the potential for reasoned

disagreement among fair-minded judges—'the more leeway [state] courts have in reaching outcomes in case-by-case determinations.'" *Id.* (emphasis in original).

Under the "unreasonable determination of the facts" provision of § 2254(d)(2), the test "is whether the petitioner has demonstrated by 'clear and convincing evidence,' § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record." *Roundtree v. Balicki,* 640 F.3d 530, 537–38 (3d Cir. 2011).   "[T]he evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication." *Id.* at 538.

"In considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims." *Simmons v. Beard,* 590 F.3d 223, 231–32 (3d Cir. 2009) (citing *Bond v. Beard,* 539 F.3d 256, 289–90 (3d Cir.2008)).   Thus, "[w]e review the appellate court decision, not the trial court decision, as long as the appellate court 'issued a judgment, with explanation, binding on the parties before it.'" *Burnside v. Wenerowicz*, 525 F. App'x 135, 138 (3d Cir. 2013).   But when the highest state court that considered the claim does not issue a reasoned opinion, we look through that decision to the last reasoned opinion of the state courts. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).   And we "presume that the unexplained

decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).   "But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

"AEDPA also restricts the ability of a federal habeas court to develop and consider new evidence." *Shoop v. Twyford*, No. 21-511, 2022 WL 2203347, at *5 (U.S. June 21, 2022).   "Review of factual determinations under § 2254(d)(2) is expressly limited to 'the evidence presented in the State court proceeding.'" *Id.* "[R]eview under § 2254(d)(1) is [also] limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U. S. at 181.   Only in certain, narrow circumstances may a habeas petitioner present evidence that was not part of the state-court record. *Shoop*, 2022 WL 2203347, at *5.   "Thus, although state prisoners may occasionally submit new evidence in federal court, 'AEDPA's statutory scheme is designed to strongly discourage them from doing so." *Id.* (quoting *Pinholster*, 563 U. S. at 186).

The highly deferential standard of § 2254(d) applies only to claims that have been "adjudicated on the merits" in the state court. *Han Tak Lee v. Glunt*, 667 F.3d

397, 403 (3d Cir. 2012).   "[I]f the state court did not reach the merits of the federal claims, then they are reviewed *de novo*." *Id.*   But we must still presume that the state court's factual determinations are correct, and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).   Further, even as to a claim adjudicated by the state court on the merits, if a habeas petitioner overcomes the § 2254(d) hurdle, the habeas court then considers the claim *de novo*. *See Panetti v. Quarterman,* 551 U.S. 930, 953 (2007) (explaining that when § 2254(d) is satisfied, "[a] federal court must then resolve the claim without the deference AEDPA otherwise requires."); *Howell v. Superintendent Rockview SCI*, 939 F.3d 260, 264 (3d Cir. 2019) ("If the state court erred, habeas relief should be granted only if, upon *de novo* review, the prisoner has established that he 'is in custody in violation of the Constitution or laws or treaties of the United States.'" (quoting 28 U.S.C. § 2254(a))).

## B.  Double-Jeopardy Claim.

Grays contends that his sentence violated the Double Jeopardy Clause.   More specifically, he contends that the Homicide by Vehicle and the Homicide by Vehicle-DUI sentences arose from a single criminal episode, and he should not have

received multiple punishments for that single criminal episode.   Grays has not, however, shown that he is entitled to a writ of habeas corpus on this basis.

In state court, Grays framed this claim as a claim that his convictions for Homicide by Vehicle and Homicide by Vehicle-DUI should have merged for sentencing purposes under Pennsylvania law. *See doc. 11-6* at 30–32.   The Pennsylvania statute regarding merger provides:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense.   Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa. C.S.A. § 9765.   There is a "close relationship between Pennsylvania's merger doctrine and federal double jeopardy jurisprudence[.]" *Wilkerson v. Superintendent Fayette SCI*, 871 F.3d 221, 229 (3d Cir. 2017).

The Double Jeopardy Clause of the Fifth Amendment, which provides that "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb," U.S. Const. amend. V, "is applicable to the States through the Fourteenth Amendment," *Benton v. Maryland*, 395 U.S. 784, 787 (1969).   The Clause protects against, among other things, "'multiple punishments for the same offense' imposed in a single proceeding." *Jones v. Thomas*, 491 U.S. 376, 381

(1989) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).   "To assess

whether two crimes constitute the 'same offense' for double jeopardy purposes,"

*Wilkerson*, 871 F.3d at 230, courts use the *Blockburger* test, set forth by the Supreme

Court in *Blockburger v. United States*, 284 U.S. 299 (1932).   "That is, 'where the

same act or transaction constitutes a violation of two distinct statutory provisions,

the test to be applied to determine whether there are two offenses or only one, is

whether each provision requires proof of a fact which the other does not.'"

*Wilkerson*, 871 F.3d at 230 (quoting *Blockburger*, 284 U.S. at 304).   "If this test

yields 'only one' offense, 'cumulative sentences are not permitted, unless elsewhere

specially authorized by Congress.'" *Id.* (quoting *Whalen v. United States*, 445 U.S.

684, 693 (1980)).

   "[T]he Pennsylvania Supreme Court imported this federal double jeopardy

test into its merger doctrine under state law." *Id.* (citing *Commonwealth v. Anderson*,

650 A.2d 20 (Pa. 1994)).   Applying the *Blockburger* test, "[t]he Pennsylvania

Supreme Court explained that, when a defendant is charged with two crimes on the

basis of the same criminal act, 'there is no difference between a double jeopardy

analysis and a merger analysis' because 'the operative consideration in both is

whether the elements of the offenses are the same or different.'" *Id.* (quoting *Anderson*, 650 A.2d at 23).

Here, although Grays presented his claim in state court as a merger claim, "[c]onsidering that the Pennsylvania state law doctrine invoked by [Grays] is based on Supreme Court case law and involves an analysis that the Pennsylvania Supreme Court has described as 'identical' to that governing a federal double jeopardy claim, we are persuaded that the Superior Court had fair notice of that claim and rejected it on the merits." *Wilkerson*, 871 F.3d at 230–31 (internal citation and footnote omitted).   Thus, we proceed to the question whether the Pennsylvania Superior Court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1).

The Pennsylvania Superior Court rightly began its "examination of [Grays'] merger claim by reviewing the statutory provisions pertinent to his challenged convictions." *Grays*, 167 A.3d at 814.   Those provisions are 75 Pa. C.S.A. § 3735(a) and § 3732(a), which define the crimes of homicide vehicle-DUI and homicide by vehicle.   At the time of Grays offense and sentencing, § 3735(a), as noted by the Superior Court, provided:

> Any person who unintentionally causes the death of another person as the result of a violation of section 3802 (relating to

23

driving under influence of alcohol or controlled substance) and who is convicted of violating section 3802 is guilty of a felony of the second degree when the violation is the cause of death and the sentencing court shall order the person to serve a minimum term of imprisonment of not less than three years.   A consecutive three-year term of imprisonment shall be imposed for each victim whose death is the result of the violation of section 3802.

*Grays*, 167 A.3d at 814.   And § 3732(a) provided:

Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

*Id*.

The Pennsylvania Superior Court then set forth the test for merger. *Id*.   After noting that the mandate of Pennsylvania's merger statute is clear, the court stated that the statute "'prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other.'" *Grays*, 167 A.3d at 814 (quoting *Commonwealth v. Baldwin*, 985 A.2d 830, 833 (Pa. 2009)).   And the court concluded that Grays' sentences for homicide by vehicle-DUI and homicide by

24

vehicle do not merge because not all the statutory elements of one offense are

included in the statutory elements of the other:

> In the case *sub judice*, assuming, *arguendo*, the crimes arose
> from a single criminal act, we disagree with [Grays] that "all of
> the statutory elements of one of the offenses are included in the
> statutory elements of the other." ***Id.***   In this regard, we note that,
> in ***Commonwealth v. Neupert***, 454 Pa. Super. 62, 684 A.2d 627
> (1996), this Court held that homicide by vehicle–DUI and
> homicide by vehicle do not merge. Specifically, we held:

>> The elements of Homicide by Vehicle are not
>> included in the elements of Homicide by Vehicle–
>> DUI.   In fact, the crimes require proof of different
>> elements.   Homicide by Vehicle requires the cause
>> of death to be the result of a violation of a motor
>> vehicle law or ordinance other than a DUI violation;
>> for example,[ as the appellant pled guilty to in
>> ***Neupert***,] racing on highway and failure to yield.
>> On the other hand, Homicide by Vehicle–DUI
>> explicitly requires a DUI conviction as an element
>> of the crime.

> ***Id.*** at 629.   ***See Commonwealth v. Collins***, 564 Pa. 144, 764
> A.2d 1056 (2001) (adopting ***Neupert's*** analysis and holding
> homicide by vehicle and homicide by vehicle–DUI do not merge
> for sentencing purposes since the legislature crafted the statutory
> elements of the two offenses as mutually exclusive as homicide
> by vehicle requires a non–DUI Vehicle Code conviction, while
> homicide by vehicle–DUI requires a DUI conviction).

> In the instant case, in addition to DUI, [Grays] was convicted of
> numerous laws relating to the use of his vehicle/the regulation of
> traffic.   Thus, ***Neupert*** and ***Collins*** are on point, and we
> conclude the crimes of homicide by vehicle and homicide by

25

vehicle–DUI did not merge for sentencing purposes. Consequently, we reject [Grays'] instant claim.

*Grays*, 167 A.3d at 814–15 (bold in original) (footnotes omitted).

The Superior Court appropriately applied what was in effect the *Blockburger* test.   Grays does not even address the Superior Court's reasoning or the *Blockburger* test.   Because Grays has not shown that the Superior Court's opinion was contrary to, or involved an unreasonable application of, clearly established Federal law as required by 28 U.S.C. § 2254(d)(1),[5]  he is not entitled to habeas relief as to his claim under the Double Jeopardy Clause.[6]

--------------------

   [5]  Although we apply the deferential standard under 28 U.S.C. § 2254(d)(1), given that the state court appropriately applied the *Blockburger* test, the result would be the same even if we applied a de novo standard of review.

   [6]  In the Superior Court, Grays also claimed that his sentence was illegal because the court failed to merge his sentences for aggravated assault by vehicle and aggravated assault by vehicle-DUI. *See Grays*, 167 A.3d at 815.   In the instant habeas petition, in connection with his double jeopardy claim, Grays mentions merger and his homicide convictions, but he does not mention his aggravated assault convictions.   Thus, we do not construe Grays' double jeopardy claim as including his aggravated assault convictions.   We note, however, that the Superior Court rejected the merger claim relating to the aggravated assault convictions for the same reasons it rejected Grays' merger claim regarding the homicide convictions. *Id*. More specifically, it concluded that "[s]imilar to the statutes for homicide by vehicle and homicide by vehicle–DUI, the legislature has crafted the statutory elements of aggravated assault by vehicle and aggravated assault by vehicle–DUI as mutually exclusive since aggravated assault by vehicle requires a non–DUI Vehicle Code conviction, while aggravated assault by vehicle–DUI requires a DUI conviction." *Id*.

### C.   Due Process Sentencing Claim.

Grays claims that he was denied due process in that his sentence was based on impermissible factors, namely, his exercise of his right to remain silent at sentencing and his exercise of his right to proceed to trial.   Grays claim in this regard is based on the sentencing court concluding that Grays lacked remorse.   We conclude that Grays is not entitled to habeas relief as to this claim.

After announcing the sentence, the trial court explained the reasons for the sentence:

> I will incorporate the pre-sentence investigation into the Court's reasons for sentencing, I've taken into consideration the facts and circumstances as they were established and presented at trial.   I've taken into consideration all the statements that were made here today, not only by the - by the defense counsel and by the victims, I took into consideration a victim impact statement that was completed by Mr. English's sister.
>
> The recommendations that were made by – by Ms. Edgerton,[7] of course, they would be left up to the parole board for those types of things if the defendant should ever be – be released on parole, but certainly those are the types of

(citing 75 Pa. C. S. A. § 3732.1 and 3735.1) (footnote omitted).   Were we to construe Grays' double jeopardy claim to include his aggravated assault convictions, we would conclude that Grays is not entitled to habeas relief for the same reasons set forth above as to the homicide convictions.

   7 Ms. Edgerton, who spoke at the sentencing proceeding, was a cousin of Karen English. *See doc. 11-2* at 12.

recommendations that are already made in our pre-sentence investigation and would be forwarded to the, uh, to the parole board.

The sentences are in the aggravated range and I, I, the aggravating circumstances here, we – you would think that the two deaths in and of themselves would be aggravating circumstances but the sentencing guidelines have already taken that into consideration and they give us the mitigated, standard, and aggravated range.   The aggravating circumstances are that the defendant – this is defendant's fifth Driving Under the Influence charge in his lifetime – five, five times.   As the Commonwealth aptly stated, didn't learn the first time, he didn't learn the second time, he didn't learn the third time, he didn't learn the fourth time, so here we are.   Has he learned now?   I don't know, but this sentence – I don't think he has.   I, I think that he, as one of the witnesses here today stated, he – defendant has shown absolutely no remorse, he showed no, no sorrow or remorse through the trial, he showed no remorse here today. Even if he didn't take responsibility for – for the accident or take responsibility for his actions or drinking and driving or, or violating the law and causing an accident, he has never shown any remorse that he was involved in an accident where people were seriously injured and, and the parents of these young children died as, as a result of the accident.   He – there's no remorse whatsoever.

It's a senseless and horrific accident, but as I said the aggravating circumstances are that the fifth DUI and there – there being absolutely no remorse whatsoever.   Total confinement is completely appropriate given that the defendant's criminal history – no amount of incarceration will ever bring back the parents of these – these children or the children of the – of the parents that are here.

It's interesting to note that the defendant while he's been incarcerated in Bradford County began attending drug and

28

alcohol counseling when he was initially incarcerated, he attended eleven groups between October 24th of 2013 and December 6th of 2013 and then just, just stopped.   So perhaps he doesn't feel that he has a problem or that his problem was fixed. The sentence will certainly provide a long period of supervision, it will protect our community and any other community that defendant resides in in hopes that he will not be consuming alcohol and getting behind the wheel of a vehicle again.

The individuals that were talked about today seemed – are extraordinary individuals.   Everybody that spoke about them talked about their great qualities.   I was particularly touched by Mr. Ryan's sister's statement and the story that she told about at a Christmas time when Mr. when Mr. Ryan English could not get home for Christmas and he was in Washington, D.C. and he decided to take out a – help a homeless person and took them out for dinner and spent some time with them over the holidays and I think that probably says it all right there what kind of individuals that we're talking about here.   Any my heart goes out to the families and their loss.

So with that, that will conclude the Court's reasons for sentencing.

*Doc. 11-2* at 43–46.

The trial court concluded that Grays' claim that it "erred in weighing its conclusion that [Grays] 'lacked remorse' in determining that it was appropriate to impose sentences in the aggravated range as this violated [his] presumption of innocence and violates his constitutional rights" was meritless. *Grays*, 167 A.3d at 816 (quoting trial court opinion).   The trial court concluded that Grays' "focus on

lack of remorse is misplaced[,]" that "even claiming the accident was not his fault, [Grays] showed no remorse for being in an accident when individuals died[,]" and there other reasons as well for sentences in the aggravated range, namely, "the protection of the public, as well as the gravity of the offense as it relates to the impact on the lives of the surviving victims, . . . and the rehabilitative needs of [Grays][.]" *Id*. at 817 (quoting the trial court opinion).   After quoting the trial court opinion and concluding that the trial court did not abuse its discretion regarding the sentence, the Superior Court noted that it "has held that 'it is undoubtedly appropriate for a trial court to consider a defendant's lack of remorse as a factor at sentencing, provided that it is specifically considered in relation to protection of the public, the gravity of the offense, and the defendant's rehabilitative needs." *Grays*, 167 A.3d at 817 (quoting *Commonwealth v. Bowen*, 975 A.2d 1120, 1125 (Pa. Super. Ct. 2009)). And it concluded that "[h]ere, the record reveals the trial court properly considered [Grays'] lack of remorse in this regard." *Id*.

Citing *Mitchell v. United States*, 526 U.S. 314 (1999), Grays contends that a defendant's Fifth Amendment right against self-incrimination applies at sentencing, a sentencing court cannot draw a negative factual inference from a defendant's decision to remain silent, he did not engage in any allocution at sentencing, and the

sentencing court improperly used his silence at sentencing to conclude that he showed no remorse.   Grays reliance on *Mitchell* is misplaced.

In *Mitchell*, the Court held that by pleading guilty, a defendant does not waive her right to remain silent at sentencing. *Id*. at 325.   *Mitchell* also held that "[b]y holding petitioner's silence against her in determining the facts of the offense at the sentencing hearing, the District Court imposed an impermissible burden on the exercise of the constitutional right against compelled self-incrimination." *Id*. a 330. But "*Mitchell* itself leaves open the possibility that some inferences might permissibly be drawn from a defendant's penalty-phase silence." *White v. Woodall*, 572 U.S. 415, 421 (2014).   In *Mitchell*, "the District Judge had actually *drawn* from the defendant's silence an adverse inference about the drug quantity attributable to the defendant." *Id*. (italics in original).   Although the Supreme Court "held that this ran afoul of the defendant's 'right to remain silent at sentencing[,]'" it "framed [its] holding narrowly, in terms implying that it was limited to inferences pertaining to the facts of the crime: 'We decline to adopt an exception for the sentencing phase of a criminal case *with regard to factual determinations respecting the circumstances and details of the crime*.'" *Id*. (quoting *Mitchell,* 526 U.S. at 325, 328-29 (emphasis added)).   "And *Mitchell* included an express reservation of direct relevance here:

31

'Whether silence bears upon the determination of a lack of remorse, or upon acceptance of responsibility for purposes of the downward adjustment provided in § 3E1.1 of the United States Sentencing Guidelines (1998), is a separate question.'" *Id*. at 421–22 (quoting *Mitchell*, 526 U.S. at 330).   The Supreme Court in *Mitchell* expressly said that it was not deciding that issue. 526 U.S. at 330 (stating that that question "is not before us, and we express no view on it").   And the Supreme Court later concluded that *Mitchell* did not clearly hold that a defendant's silence at the penalty phase could not be used as indicative of lack of remorse. *White*, 572 U.S. at 422 (reversing grant of habeas corpus, in a death-penalty case, where the trial judge failed to give a no-adverse-inference instruction based on the defendant's silence at the penalty phase, citing the reservation in *Mitchell*, and concluding that the state court's decision was not objectively unreasonable).

Given that *Mitchell* expressly refrained from opining on the question whether silence at sentencing could be used to draw an inference of lack of remorse, *Mitchell* does not support Grays.   And Grays has not shown that the Superior Court's decision that under the circumstances, the sentencing court properly considered Grays' lack of remorse was contrary to, or involved an unreasonable application of,

clearly established Federal law, as determined by the Supreme Court of the United States.

Also meritless is Grays' contention that he is entitled to habeas relief because the sentencing court improperly inferred that he showed no lack of remorse based on his decision to exercise his right to go to trial.   As to his sentence being influenced by the exercise of his right to go to trial, Grays has not pointed to anything to support such an assertion.   He has not shown that the sentencing court's reference to a lack of remorse had any relation to his exercise of his right to go to trial.   Further, the two Supreme Court cases—*Bordenkircher v. Hayes*, 434 U.S. 357 (1978), and *United States v. Goodwin*, 457 U.S. 368 (1982)—that he cites for the proposition that his sentence was unconstitutional in this regard are particularly inapt as neither involved sentencing (they involved the plea bargaining process) and in each the Supreme Court held that there was no due process violation. *See Bordenkircher*, 434 U.S. at 365 (holding "that the course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment"); *Goodwin*, 457 U.S. at 380–84 (noting that "[t]his case, like

*Bordenkircher*, arises from a pretrial decision to modify the charges against the defendant[,]" concluding that "a presumption of vindictiveness" was not warranted in that case, and holding that "[a]bsent a presumption of vindictiveness, no due process violation has been established").

Grays also cites two cases from the United States Court of Appeals for the Third Circuit—*Gov't of the Virgin Islands v. Walker*, 261 F.3d 370 (3d Cir. 2001), and *United States v. Moskovits*, 86 F.3d 1303 (3d Cir. 1996)—to support his contention that his sentence was based on his decision to go to trial.   Under 28 U.S.C. § 2254(d)(1), however, the question is whether the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."   "The state court judgment must not merely be contrary to law as articulated by any federal court; rather '[i]t must contradict "clearly established" decisions of the United States Supreme Court alone." *Rosen*, 972 F.3d at 254 n.51 (quoting *Fischetti*, 384 F.3d at 147).   Nevertheless, '"[i]n determining whether a state decision is an unreasonable application of Supreme Court precedent, [the Third Circuit] has taken the view that decisions of federal courts below the level of the . . . Supreme Court may be helpful . . . in ascertaining the reasonableness of state courts'

34

application of clearly established . . . Supreme Court precedent.'" *Id.* (quoting

*Fischetti*, 384 F.3d at 149).   But here, Grays has not set forth an argument for how

the Circuit court cases he cites aids in such a determination.   Moreover, in each of

those cases, unlike in Grays' case, the sentencing court made comments that linked

the sentencing decision to the defendant's exercise of his right to go to trial. *See*

*Walker*, 261 F.3d at 374–76 (observing that the sentencing court inappropriately

interjected itself into the plea negotiations, that it "exceeded all conceivable

limitations of propriety," and that "the judge's implicit threats and coercive

involvement in plea negotiations" raised "the inference that [the trial judge] gave

undue consideration to [the defendant's] refusal to plead guilty, and that his

insistence on a jury trial impermissibly influenced [the trial judge's] imposition of

the maximum sentence"); *Moskovits*, 86 F.3d at 1310–11 (vacating sentence

because, among other reasons, the sentencing judge commented that the defendant'

decision to exercise his constitutional right to a trial by jury rather than accept the

government's plea offer was a factor in the sentence he imposed).   In Grays' case,

the sentencing court did not comment on Grays' decision to go to trial.

Grays also cites *White v. Lamas*, 905 F. Supp. 2d 624, 629–31 (E.D. Pa. 2012)

(granting writ of habeas corpus where prior to jury selection, during trial, and

multiple times during sentencing, the sentencing judge commented on the

defendant's refusal to accept the offered plea deal).   To state the obvious: a district

court opinion is not clearly established Supreme Court precedent.   And again,

Grays has not set forth an argument for how this case aids in determining the

reasonableness of the Superior Court's application of clearly established Supreme

Court precedent.   Further, unlike in Grays' case, in that case (like in the Circuit

court cases cited by Grays), the sentencing judge made comments regarding the

defendant's decision to exercise his right to go to trial. *Id*. at 631.   Also, in that case,

the district court was addressing the claim on de novo review, not the highly

deferential review under 2254(d)(1). *Id*. at 637 (finding de novo review appropriate

because the state court did not address the claim on the merits).   Moreover,

highlighting that there is a difference between being remorseful and exercising the

right to go to trial, the sentencing judge in that case determined that the defendant

there was "truly remorseful" but that he did not accept responsibility and he put the

decedent's family through an "extremely extraordinarily unnecessary trial." *Id*. at

639.   In sum, neither this case, nor the Circuit court cases cited by Grays, are

analogous to Grays' case.

Grays has not shown that the Superior Court decision regarding the sentencing court commenting on Grays' lack of remorse resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Accordingly, Grays is not entitled to habeas relief as to this claim.

### D.   Ineffective-Assistance-of-Trial-Counsel Claim Regarding Sentencing Exposure.

Grays claims that his trial counsel was ineffective by not adequately advising him regarding his sentencing exposure, which resulted in him rejecting a plea agreement.   The state court addressed this claim on the merits.   We first set forth the standards for ineffective-assistance-of-counsel claims.   We next set forth the Superior Court's opinion.   Then, addressing the merits of the claim, we conclude that Grays has not shown that the Superior Court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.   Nor has Grays shown that the decision was based on an unreasonable determination of the facts     Thus, Grays is not entitled to habeas relief as to this claim.

### 1.   Ineffective Assistance of Counsel Standards.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defence." U.S. Const. amend VI.   The purpose of the right to the assistance of counsel is to ensure a fair trial, and "the Court has recognized that 'the right to counsel is the right to the effective assistance of counsel.'" *Strickland v. Washington,* 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).   "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.*   "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).   The clearly established federal law as to an ineffective-assistance-of-counsel claim is *Strickland,* 466 U.S. at 687, which sets forth a two-prong analysis.

Under the first prong of *Strickland*, the petitioner must establish that counsel's performance was deficient. *Id.* at 687.   "*Strickland's* first prong sets a high bar." *Buck v. Davis*, 137 S. Ct. 759, 775 (2017).   To establish that counsel's performance was deficient, the petitioner must establish that "counsel's representation fell below

an objective standard of reasonableness." *Strickland,* 466 U.S. at 688.   "Judicial

scrutiny of counsel's performance must be highly deferential." *Id.* at 689.   As such,

the court "must apply a 'strong presumption' that counsel's representation was

within the 'wide range' of reasonable professional assistance," *Harrington*, 562 U.S.

at 104 (quoting *Strickland,* 466 U.S. at 689), and "[t]o overcome that presumption, a

defendant must show that counsel failed to act 'reasonabl[y] considering all the

circumstances[,]'" *Pinholster,* 563 U.S. at 189 (quoting *Strickland,* 466 U.S. at 688).

"The challenger's burden is to show 'that counsel made errors so serious that

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment.'" *Harrington,* 562 U.S. at 104 (quoting *Strickland,* 466 U.S. at 687).

Under the second prong of *Strickland*, the petitioner must establish prejudice.

*Strickland,* 466 U.S. at 687.   To do so, the petitioner must show a reasonable

probability that, if not for counsel's errors, the result of the proceeding would have

been different. *Id.* at 694.   The petitioner "need not prove that the evidence would

have been insufficient if not for counsel's errors . . . [or] 'that counsel's deficient

conduct more likely than not altered the outcome.'" *Saranchak v. Sec'y, Pa. Dep't of

Corr.*, 802 F.3d 579, 588 (3d Cir. 2015) (quoting *Strickland,* 466 U.S. at 693).

Rather, the issue is whether there is a reasonable probability of a different result. *Id*.

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.   "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster,* 563 U.S. at 189 (quoting *Harrington,* 562 U.S. at 112).

To prevail on an ineffective-assistance claim, a petitioner must satisfy both prongs of *Strickland*.   A court can choose which prong of the standard to apply first, and it may reject an ineffectiveness claim on the ground that the petitioner was not prejudiced without addressing whether counsel's performance was deficient. *Strickland,* 466 U.S. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. 356, 371 (2010).   "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one." *Premo v. Moore*, 562 U.S. 115, 122 (2011).   And "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105.   When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was

unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*

### 2.   The Superior Court Opinion.

The Superior Court set forth the standard for deciding ineffective-assistance claims under the PCRA. *Grays*, 2019 WL 2323851 at *3.   More specifically, the Superior Court set forth the three-part standard for ineffective-assistance-of-counsel claims as set forth in *Commonwealth v. Bomar*, 104 A.3d 1179 (Pa. 2014):

> . . . [T]he petitioner must establish: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and, (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different."

*Id.* (quoting *Bomar*, 104 A.3d at 1188).   And as to Grays' claim that trial counsel was ineffective by improperly advising him regarding his potential sentence, causing him to reject a plea offer, the Superior Court further recognized that in that context, the prejudice prong of *Strickland* requires a defendant to show a reasonable probability that the outcome of the plea process would have been different but for

counsel's ineffectiveness of counsel and part of that showing is that the defendant would have accepted the plea offer. *Grays*, 2019 WL 2323851, at *6 (quoting *Commonwealth v. Steckley*, 128 A.3d 826, 832 (Pa. Super. 2015) (quoting *Lafler v. Cooper*, 566 U.S. 156, 164 (2012)).

The Superior Court then summarized Grays' testimony at the PCRA hearing regarding his counsel's advice and his decision to go to trial:

> . . .   At his PCRA hearing, [Grays] testified about a letter sent by the Commonwealth to trial counsel that invited trial counsel "to offer to settle the case for a five year minimum."   [Grays] claimed that trial counsel informed him that the Commonwealth did not have the evidence to convict him of several offenses, and that he would receive, at most, a 10-year sentence.   [Grays] maintains this advice convinced him to go to trial.   [Grays] stated that had he known he had the potential to receive a minimum sentence of more than 20 years of incarceration, he would have "deeply considered taking [the] plea."

*Id.* (citations to the record omitted).   The Superior Court observed that the PCRA court found that Grays' testimony in this regard was not credible given that Grays consistently claimed his innocence—both at trial and during the PCRA proceedings. *Id*.   "Indeed," the Superior Court noted, Grays "admitted on cross-examination during his PCRA hearing that he believed during his trial that he had no alcohol in his system at that time of the accident and that he was not at fault for the accident." *Id*. (citation to the record omitted).   The Superior Court concluded that "[b]ased on

[Grays'] own assertions of innocence, both at trial and before the PRCA court, the record clearly supports the PCRA court's determination that [Grays] would not have pled guilty, as doing so would have required him to forgo his assertions of innocence." *Id.*   Thus, determining that Grays "failed to demonstrate that there was a reasonable probability that he would have accepted a plea offer[,]" the court held that his claim that his counsel was ineffective was meritless. *Id.*

### 3.   The state court's adjudication was not contrary to clearly established Federal Law, as determined by the Supreme Court of the United States.

Although the Pennsylvania courts use slightly different language to articulate the ineffective-assistance-of-counsel standard, the standard used by the Pennsylvania courts is consistent with the *Strickland* standard.   The Third Circuit "has repeatedly recognized that Pennsylvania's test for ineffective assistance of counsel is consistent with the Supreme Court's decision in *Strickland* because it requires 'findings as to both deficient performance and actual prejudice.'" *Tyson v. Superintendent Houtzdale SCI*, 976 F.3d 382, 391 (3d Cir. 2020) (quoting *Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 476 (3d Cir. 2017)).   And the Superior Court specifically recognized that when the claim is that counsel's

ineffectiveness involves the defendant's rejection of a plea offer and the decision to go to trial, the Supreme Court's decision in *Lafler* sets forth the applicable standard. *Grays*, 2019 WL 2323851, at *6 (quoting *Steckley*, 128 A.3d at 832 (quoting *Lafler*, 566 U.S. at 164).   And the Superior Court applied that standard.   Thus, the Superior Court's decision on Grays' claim of ineffective assistance of counsel was not contrary to clearly established federal law.   So, we turn to whether the state court's decision resulted in a decision that involved an unreasonable application of clearly established federal law, *i.e., Strickland* and *Lafler*, or resulted in a decision that was based on an unreasonable determination of the facts.

### 4.   The state court's decision was not an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts.

The state court's adjudication of Grays' ineffective-assistance-of-counsel claim was not an unreasonable application of *Strickland* or *Lafler*.   Nor was the state court's decision based on an unreasonable determination of the facts.

As set forth above, the Superior Court concluded that Grays failed to show that there was a reasonable probability that he would have accepted a plea offer. Thus, he failed to show prejudice under *Strickland* and *Lafler*.   Contrary to the

PCRA court and the Superior Court, on the same record, other jurists might have found Grays credible and might have reached a different conclusion.   But that does not matter.   Rather, "[a]ll that matter[s] [is] whether the [Pennsylvania Superior Court], notwithstanding its substantial 'latitude to reasonably determine that a defendant has not [shown prejudice],' still managed to blunder so badly that every fairminded jurist would disagree." *Mays*, 141 S. Ct. at 1149 (quoting *Knowles*, 556 U.S. at 123).   Under that standard, the Superior Court's determination that Grays failed to show prejudice stands: that determination was not an unreasonable application of clearly established federal law.   Nor was the Superior Court's decision based on an unreasonable determination of the facts.   Thus, Grays is not entitled to habeas relief as to this claim.

## IV.  Grays is not entitled to habeas relief as to any of the claims that he failed to present to the state courts.

Grays presents three other claims of ineffective assistance by trial counsel. He claims counsel was ineffective by failing to discuss with him a no-contest plea; by failing to investigate, consult with, and/or present an accident reconstructionist; and by failing to competently advise him about his decision to testify and to

adequately prepare him to testify.   Grays did not present these claims to the state courts.

By failing to present these claims to the state courts, Grays procedurally defaulted the claims.   Grays contends that his procedural default is excused under *Martinez* v. *Ryan*, 566 U.S. 1 (2012).   After setting forth the standards regarding procedural default and *Martinez*, we conclude that for the reasons set forth below, even assuming for the sake of argument that Grays could overcome his procedural default under *Martinez*, Grays is not entitled to habeas relief as to his remaining claims because he has not presented evidence in the state courts to support those claims, and he cannot overcome such a failure under *Martinez*.   Nor has Grays shown that meets the stringent requirements necessary to entitle him to an evidentiary hearing in this court to develop the facts to support his claims.

### A.   Procedural Default and *Martinez*.

"Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." *Martinez,* 566 U.S. at 9.   One of these rules is that a state prisoner must exhaust available state remedies before

46

filing a petition for habeas corpus in federal court. 28 U.S.C. § 2254(b) and (c).

The exhaustion requirement serves the interests of comity between the federal and

state systems by allowing the state an initial opportunity to determine and correct

any violations of a prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838,

844 (1999). "The exhaustion rule also serves the secondary purpose of facilitating

the creation of a complete factual record to aid the federal courts in their review."

*Walker v. Vaughn*, 53 F.3d 609, 614 (3d Cir. 1995).

If a claim has not been fairly presented to the state courts, but state law clearly

forecloses review, exhaustion is excused. *Carpenter v. Vaughn*, 296 F.3d 138, 146

(3d Cir. 2002). Such a claim is "technically exhausted because, in the habeas

context, 'state-court remedies are . . . "exhausted" when they are no longer available,

regardless of the reason for their unavailability.'" *Shinn v. Ramirez*, 142 S. Ct. 1718,

1732 (2022) (quoting *Woodford v. Ngo*, 548 U.S. 81, 92–93 (2006)). "But to allow

a state prisoner simply to ignore state procedure on the way to federal court would

defeat the evident goal of the exhaustion rule." *Id.* "Thus, federal habeas courts

must apply 'an important "corollary" to the exhaustion requirement': the doctrine of

procedural default. *Id.* (quoting *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

"Under that doctrine, federal courts generally decline to hear any federal claim that

was not presented to the state courts 'consistent with [the State's] own procedural rules.'" *Id*. (quoting *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)).   "Grounded in principles of comity and federalism, the procedural default doctrine prevents a federal court sitting in habeas from reviewing a state court decision that rests on a state law ground 'that is sufficient to support the judgment,' when that state law ground 'is independent of the federal question and adequate to support the judgment.'" *Munchinski v. Wilson,* 694 F.3d 308, 332–33 (3d Cir. 2012) (quoting *Coleman v. Thompson,* 501 U.S. 722, 729 (1991)).   "In such situations, 'resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory.'" *Id.* at 333.

There are, however, exceptions to the bar on consideration of procedurally defaulted claims. *Martinez,* 566 U.S. at 10.   One such exception provides that a federal habeas court may consider the merits of a procedurally defaulted claim when the petitioner establishes cause for the procedural default and actual prejudice because of the alleged violation of federal law. *Coleman*, 501 U.S. at 750.   "To show cause and prejudice, 'a petitioner must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements.'" *Cristin v. Brennan*, 281 F.3d 404, 412 (3d Cir. 2002) (quoting

*Coleman*, 501 U.S. at 753).   Because there is no Sixth Amendment right to the assistance of counsel during state collateral proceedings, the ineffective assistance of counsel during those proceedings generally does not constitute cause to excuse a procedural default. *See Coleman*, 501 U.S. at 754–55.

In *Martinez,* the United States Supreme Court created a narrow exception to the rule set forth in *Coleman* that an attorney's errors in post-conviction collateral proceedings do not constitute cause to excuse a procedural default. 566 U.S. at 9. The Court in *Martinez* held that a prisoner may establish cause for the procedural default of an ineffective-assistance-of-trial-counsel claim by demonstrating the ineffective assistance of his or her counsel in "initial-review collateral proceedings," which the Court defined as collateral proceedings that "provide the first occasion to raise a claim of ineffective assistance at trial." *Id.* at 8–9.

"*Martinez'*s equitable exception applies to states that require prisoners to await state habeas to raise ineffective-assistance claims." *Richardson v. Superintendent Coal Twp. SCI*, 905 F.3d 750, 760 (3d Cir. 2018).   "It also applies to states, like Pennsylvania, whose procedures do not strictly bar earlier review but typically do not afford an opportunity to raise ineffective-assistance claims until state habeas." *Id*.

49

*Martinez*'s exception has two prongs.   The "exception is available to a petitioner who can show that: 1) his procedurally defaulted ineffective assistance of trial counsel claim has 'some merit'; and that 2) his state-post conviction counsel was 'ineffective under the standards of *Strickland v. Washington*.'" *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937 (3d Cir. 2019) (citations omitted).

Under the first prong of *Martinez*—the some-merit prong—the underlying ineffective-assistance-of-trial-counsel claim must be substantial. *Id*. at 938; *Richardson*, 905 F.3d at 763.   A claim is substantial if "reasonable jurists could debate" whether the claim has merit or if the "issues presented [are] adequate to deserve encouragement to proceed further." *Workman*, 915 F.3d at 938 (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003)).   In making this determination, "we are guided by the two-part *Strickland* analysis, but we remain mindful that the 'substantiality' inquiry 'does not require full consideration of the factual or legal bases adduced in support of the claims.'" *Preston v. Superintendent Graterford SCI*, 902 F.3d 365, 377 (3d Cir. 2018) (quoting *Miller-El*, 537 U.S. at 336).   In other words, "substantiality is a notably lower standard" than the standard to prove an ineffective-assistance-of-counsel claim on the merits. *Richardson*, 905 F.3d at 764.

Under the second prong of *Martinez*—the ineffectiveness-of-state-post-conviction-counsel prong—a habeas claimant must show that PCRA's counsel's performance was deficient under *Strickland*. *Richardson*, 905 F.3d at 762. In other words, the habeas claimant must show that PCRA "counsel's performance fell below an objective standard of reasonableness." *Workman*, 915 F.3d at 941. And for a habeas claimant to show that PCRA "counsel's deficient performance caused prejudice under *Srickland*, he must show that his state post-conviction counsel could have obtained a different result had he presented the now-defaulted ineffective-assistance-of-trial-counsel claim." *Id*. at 938.   But a habeas petitioner is not required to prove the merits of his underlying ineffective-assistance-of-trial-counsel claim as a condition of having his procedural default of that claim excused. *Id*. at 940-41.   Thus, if the claimant "shows that his underlying ineffective-assistance-of-trial-counsel claim has some merit and that his state post-conviction counsel's performance fell below an objective standard of reasonableness, he has shown sufficient prejudice from counsel's ineffective assistance that his procedural default must be excused under *Martinez*." *Id*. at 941.

If a claimant satisfies *Martinez*, his procedural default is excused, and the federal court is then allowed to consider the merits of the underlying ineffective-assistance-of-trial-counsel claim. *Id*. at 939.

### B.   Grays is not entitled to habeas relief as to his remaining claims.

Grays contends that his procedural default is excused under *Martinez*.   We assume for the sake of argument that he is correct and that his procedural default is excused under *Martinez*.   Nevertheless, Grays is not entitled to habeas relief as to his remaining claims because he has not presented evidence in the state courts to support those claims, and he cannot overcome such a failure under *Martinez*.   Nor has Grays shown that he meets the stringent requirements necessary to entitle him to an evidentiary hearing in this court to develop the facts to support his claims.

"Often, a prisoner with a defaulted claim will ask a federal habeas court not only to consider his claim but also to permit him to introduce new evidence to support it." *Shinn*, 142 S. Ct. at 1728.   But the standard under AEDPA to expand the state-court record is stringent. *Id*.   "If a prisoner has 'failed to develop the factual basis of a claim in State court proceedings,' a federal court 'shall not hold an evidentiary hearing on the claim' unless the prisoner satisfies one of two narrow

exceptions[.]" *Id.* (quoting 28 U.S.C. § 2254(e)(2)).   More specifically, the prisoner

must show that "the claim relies on" either: "a new rule of constitutional law, made

retroactive to cases on collateral review by the Supreme Court, that was previously

unavailable; or . . . a factual predicate that could not have been previously

discovered through the exercise of due diligence[.]" 28 U.S.C. § 2254(e)(2)(A).   In

addition to showing one of the above, to be entitled to an evidentiary hearing, the

prisoner must "demonstrate[] that the new evidence will establish his innocence 'by

clear and convincing evidence[.]'" *Shinn*, 142 S. Ct. at 1728 (quoting 28 U.S.C.

§ 2254(e)(2)(B)).   "In all but these extraordinary cases, AEDPA 'bars evidentiary

hearings in federal habeas proceedings initiated by state prisoners.'" *Id.* (quoting

*McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013)).

Grays did not develop a factual record in the state court to support his

remaining ineffective-assistance-of-trial-counsel claims.   Although he had a PCRA

hearing, he did not present evidence at that hearing or otherwise in state court to

support his claims.   He does not argue that under § 2254(e)(2) he did not fail to

develop the factual record in state court.   Nor does he argue that he can meet the

stringent requirements of § 2254(e)(2), such that he is entitled to an evidentiary

hearing under that provision.   In fact, he does not address § 2254(e)(2) at all.

Rather, he seeks an evidentiary hearing, and he repeatedly suggests that his failure to develop the factual record is a result of his PCRA counsel failing to raise and "litigate" issues. *See doc. 1* at 8, 9, 10, 10 n.4, 11, 12; *doc. 21* at 11, 16, 19. Construing Grays' reference to PCRA counsel's failure to "litigate" liberally, he may be contending that he is entitled to an evidentiary hearing because his PRCA counsel failed to develop the factual record in state court.   In other words, he may be suggesting that *Martinez* be extended to excuse his failure to develop the record in state court.   If this is Grays' argument, it is without merit.

The Supreme Court recently addressed "whether the equitable rule announced in *Martinez* permits a federal court to dispense with § 2254(e)(2)'s narrow limits because a prisoner's state postconviction counsel negligently failed to develop the state-court record." *Shinn*, 142 S. Ct. at 1728.   In concluding that *Martinez* does not permit dispensing with the limits set by § 2254(e)(2), the Court explained the "even higher bar for excusing a prisoner's failure to develop the state-court record":

> Shortly before AEDPA, we held that a prisoner who "negligently failed" to develop the state-court record must satisfy *Coleman*'s cause-and-prejudice standard before a federal court can hold an evidentiary hearing. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 9, 112 S. Ct. 1715, 118 L. Ed.2d 318 (1992).   In *Keeney*, we explained that "little [could] be said for holding a habeas petitioner to one standard for failing to bring a claim in state court and excusing the petitioner under another, lower standard for failing to

54

develop the factual basis of that claim in the same forum." *Id.*, at 10, 112 S. Ct. 1715.   And, consistent with *Coleman*, we held that evidentiary development would be inappropriate "where the cause asserted is attorney error." 504 U.S. at 11, n. 5, 112 S. Ct. 1715.

Four years later, Congress enacted AEDPA and replaced *Keeney*'s cause-and-prejudice standard for evidentiary development with the even "more stringent requirements" now codified at 28 U.S.C. § 2254(e)(2). *Williams v. Taylor*, 529 U.S. 420, 433, 120 S. Ct. 1479, 146 L. Ed.2d 435 (2000) (*Michael Williams*).   Section 2254(e)(2) provides that, if a prisoner "has failed to develop the factual basis of a claim in State court proceedings," a federal court may hold "an evidentiary hearing on the claim" in only two limited scenarios.   Either the claim must rely on (1) a "new" and "previously unavailable" "rule of constitutional law" made retroactively applicable by this Court, or (2) "a factual predicate that could not have been previously discovered through the exercise of due diligence." §§ 2254(e)(2)(A)(i), (ii).   If a prisoner can satisfy either of these exceptions, he also must show that further factfinding would demonstrate, "by clear and convincing evidence," that "no reasonable factfinder" would have convicted him of the crime charged. § 2254(e)(2)(B).   Finally, even if all of these requirements are satisfied, a federal habeas court still is not *required* to hold a hearing or take any evidence.   Like the decision to grant habeas relief itself, the decision to permit new evidence must be informed by principles of comity and finality that govern every federal habeas case. Cf. *Brown*, 596 U.S., at – —— – ——, 142 S. Ct., at 1523–1524.

*Id.* at 1733–34.

The Court in *Shinn* further explained that "[e]ven though AEDPA largely

displaced *Keeney*, § 2254(e)(2) retained 'one aspect of *Keeney*'s holding.'" *Id.* at

1734 (quoting *Michael Williams*, 529 U.S. at 433).   "Namely, § 2254(e)(2) applies only when a prisoner 'has failed to develop the factual basis of a claim.'" *Id*. Noting that it has interpreted "'fail,' consistent with *Keeney*, to mean that the prisoner must be 'at fault' for the undeveloped record in state court[,]" and "[a] prisoner is 'at fault' if he 'bears responsibility for the failure' to develop the record[,]" the Court concluded that "state postconviction counsel's ineffective assistance in developing the state-court record is attributed to the prisoner." *Id*. at 1734.   In that regard, the Court reiterated that "a prisoner 'bears the risk in federal habeas for all attorney errors made in the course of the representation,' unless counsel provides 'constitutionally ineffective' assistance, [a]nd, because there is no constitutional right to counsel in state postconviction proceedings, a prisoner ordinarily must 'bea[r] responsibility' for all attorney errors during those proceedings[.]" *Id*. at 1735.   "Among those errors, a state prisoner is responsible for counsel's negligent failure to develop the state postconviction record." *Id*.   Thus, the Court held that "under § 2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel." *Id*.

56

In so holding, the Court considered the argument that *Martinez* should be extended to excuse postconviction counsel's failure to develop the state-court record because "where, per *Martinez*, a prisoner is not responsible for state postconviction counsel's failure to raise a claim, it makes little sense to hold the prisoner responsible for the failure to develop that claim." *Id*. at 1736.   The Supreme Court rejected that argument, explaining that it did not have the authority to extend *Martinez* in that way because whereas *Martinez* was an equitable exception to the judge-made rule of procedural default, § 2254(e)(2) is a statute, and the Court does not have the authority to amend a statute. *Id*.   "Where Congress has erected a constitutionally valid barrier to habeas relief, a court *cannot* decline to give it effect." *Id*.   And the Court concluded that expanding *Martinez* in the manner requested was not consistent with either the text of § 2254(e)(2) or the Court's prior precedents:

> . . .   We have no power to redefine when a prisoner "has failed to develop the factual basis of a claim in State court proceedings." § 2254(e)(2).   Before AEDPA, *Keeney* held that "attorney error" during state postconviction proceedings was not cause to excuse an undeveloped state-court record.   And, in *Michael Williams*, we acknowledged that § 2254(e)(2) "raised the bar *Keeney* imposed on prisoners who were not diligent in state-court proceedings,"   while reaffirming that prisoners are responsible for attorney error[.]   Yet here, respondents claim that attorney error alone permits a federal court to expand the

federal habeas record.   That result makes factfinding more
readily available than *Keeney* envisioned pre-AEDPA and
ignores *Michael Williams'* admonition that "[c]ounsel's failure"
to perform as a "diligent attorney" "triggers the opening clause
of § 2254(e)(2)."   We simply cannot square respondents'
proposed result with AEDPA or our precedents.

*Id.* 1736 (internal case citations omitted).

The Court further rejected the contention that because the Court in *Coleman*

had left open the possibility that, in the future, ineffective assistance by

postconviction counsel may under certain circumstances constitute cause to excuse

procedural default, Congress may have drafted § 2254(e)(2) with that in mind. *Id*.

Noting that "in *Coleman*, [it] 'reiterate[d] that counsel's ineffectiveness will

constitute cause only if it is an independent constitutional violation,' and surmised

that a hypothetical constitutional right to initial-review postconviction counsel could

give rise to a corresponding claim for cause[,]" the Court emphasized that since

*Coleman*, it has "repeatedly reaffirmed that there is no constitutional right to counsel

in state postconviction proceedings." *Id*. at 1737 (case citations omitted).

The Court further rejected the proposed "equitable rewrite of § 2254(e)(2)

because it lacks any principled limit[,]" noting that *Martinez* only addressed claims

of ineffective assistance of trial counsel, but § 2254(e)(2) applies to any claim as to

which the prisoner failed to develop the factual basis. *Id*.   And '[u]nlike for

procedural default" (which is a judge-made rule), the Court "lack[s] equitable authority to amend a statute to address only a subset of claims." *Id.*   "Thus, if a prisoner were not 'at fault' under § 2254(e)(2) simply because postconviction counsel provided ineffective assistance, . . . the prisoner's blamelessness necessarily would extend to *any claim* that postconviction counsel negligently failed to develop[,]" but "[n]ot even *Martinez* sweeps that broadly." *Id.*

"Finally, setting aside that [it] lacks authority to amend § 2254(e)(2)'s clear text," the Supreme Court concluded, that "*Martinez* itself cuts against" its expansion to excuse the failure of postconviction counsel to develop the record. *Id.*   In addition to pointing out that *Martinez* explicitly stressed that its holding was narrow, the Court noted that in *Martinez*, it "explained that its 'holding . . . ought not to put a significant strain on state resources,' because a State 'faced with the question whether there is cause for an apparent default . . . may answer' that the defaulted claim 'is wholly without factual support.'" *Id.* at 1737–38 (quoting *Martinez*, 566 U.S. at 15–16).   But "[t]hat assurance has bite only if the State can rely on the state-court record." *Id.* at 1738.   "Otherwise, 'federal habeas courts would routinely be required to hold evidentiary hearings to determine' whether state postconviction counsel's factfinding fell short." *Id.* (quoting *Murray*, 477 U.S. at 487).

The Court also concluded that a prisoner may not make an end-run around § 2254(e)(2) by submitting evidence in a habeas proceeding other than at a formal hearing on a claim:

> In *Holland*, we explained that § 2254(e)(2)'s "restrictions apply *a fortiori* when a prisoner seeks relief based on new evidence without an evidentiary hearing." 542 U.S. at 653, 124 S. Ct. 2736 (emphasis deleted). The basis for our decision was obvious: A contrary reading would have countenanced an end-run around the statute. Federal habeas courts could have accepted any new evidence so long as they avoided labeling their intake of the evidence as a "hearing." Therefore, when a federal habeas court convenes an evidentiary hearing for any purpose, or otherwise admits or reviews new evidence for any purpose, it may not consider that evidence on the merits of a negligent prisoner's defaulted claim unless the exceptions in § 2254(e)(2) are satisfied.

*Id.* at 1738.

In sum, Grays cannot use PCRA counsel's failure to "litigate" his remaining claims as a basis for bypassing the requirements of § 2254(e)(2). And Grays has not shown that he meets the stringent requirements necessary under § 2254(e)(2) to entitle him to an evidentiary hearing in this court to develop the facts to support his claims. Because Grays is not entitled to an evidentiary hearing and he has not pointed to facts in the state court record supporting his remaining claims of ineffective assistance of trial counsel, he is not entitled to habeas relief as to those claims.

60

## V.   Cumulative Error Claim.

Grays' next claim is a claim of cumulative error.   "The cumulative error doctrine allows a petitioner to present a standalone claim asserting the cumulative effect of errors at trial that so undermined the verdict as to constitute a denial of his constitutional right to due process." *Collins v. Sec'y of Pennsylvania Dep't of Corr.*, 742 F.3d 528, 542 (3d Cir. 2014).   But "a claim of cumulative error must be presented to the state courts before it may provide a basis for habeas relief." *Id.* at 543 (citing 28 U.S.C. § 2254(b)(1)(A) (exhaustion requirement)).   Here, Grays did not present his cumulative error claim to the state courts.   Because "[i]t is now too late for him to return to the state courts to exhaust that claim," "it is therefore procedurally defaulted and not properly before us." *Id.*   Grays has not shown that his procedural default is excused.   Thus, he is not entitled to habeas relief on this claim.   Moreover, even were we to excuse Grays' procedural default of his cumulative-error claim, that claim fails as we have not found any errors in the first place.

## VI.   Ineffective Assistance of Direct Appeal and PCRA counsel.

Finally, Grays contends that "to the extent that counsel failed to reasonably raise and litigate the issues described at trial, direct appeal and/or PCRA, counsel

were ineffective in violation of [his] Sixth and Fourteenth Amendment rights." *Doc. 1* at 12.   We have already addressed Grays' claims of ineffective assistance of trial counsel.   And Grays does not explain how direct appeal counsel was ineffective.

That leaves Grays' contention that PCRA counsel was ineffective.   We have addressed PCRA counsel's alleged ineffectiveness in relation to excusing default under *Martinez,* and we assumed for the sake of argument that his procedural default was excused.   We also addressed—and rejected—Grays' suggestion that because PCRA counsel failed to develop the record in state court as to some of the claims, Grays is entitled to an evidentiary hearing in this court as to those claims.   And to the extent that Grays asserts his PCRA counsel's ineffective assistance is an independent claim, that assertion is frivolous.   28 U.S.C. § 2254(i) provides that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."   And the Supreme Court has "repeatedly reaffirmed that there is no constitutional right to counsel in state postconviction proceedings." *Shinn*, 142 S. Ct. at 1737.   "Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman*, 501 U.S. at 752.

## VII.  Certificate of Appealability.

For the reasons stated above, we will deny Grays' petition for a writ of habeas corpus.   A state prisoner may not appeal the denial of a habeas petition "[u]nless a circuit justice or judge issues a certificate of appealability[.]" 28 U.S.C. § 2253(c)(1)(A).   "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).   "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).   And where the court dismisses a claim on procedural grounds, the petitioner must demonstrate "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

Because we conclude that reasonable jurists would not find our assessment of the claims decided on the merits debatable or wrong and reasonable jurists would not find our procedural rulings debatable, we will not issue a certificate of appealability.

**VIII.   Conclusion.**

For the foregoing reasons, we will deny Grays' petition for a writ of habeas corpus, and we will deny a certificate of appealability.   An appropriate order follows.

_**S/Susan E. Schwab**_
Susan E. Schwab
United States Magistrate Judge